The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Benito F. MADRIL,
Defendant–Appellant.

No. 86SA97.

Supreme Court of Colorado,
En Banc.

Dec. 7, 1987.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Curt P. Kriksciun, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Montano & Encinas, P.C., Duane Montano, Denver, for defendant-appellant.

QUINN, Chief Justice.

Benito F. Madril, the defendant, appeals his conviction of sexual assault on a child by one in a position of trust. § 18–3–405(1) and (2)(b), 8B C.R.S. (1986). He claims that the statutory crime for which he was convicted is violative of equal protection of the laws,[1] that a witness' prior inconsistent statement was erroneously admitted, that the jury was improperly instructed on the elements of the charge, and that the court abused its discretion in sentencing him to a term of imprisonment. We affirm the judgment.

## I.

The defendant was charged with the class 3 felony of sexual assault on a child by one in a position of trust. The information alleged that between August 20 and August 21, 1984, the defendant knowingly subjected C.Q., who was then less than fifteen years of age, to sexual contact and that the defendant was at least four years older than the victim and occupied a position of trust with respect to the victim. On the date of the offense the defendant was a thirty-six year old divorced parent who had legal custody of his eight year old daughter and his seven year old son. The victim, C.Q., was a young girl who was a few days short of ten years of age.

The prosecution's evidence indicated that on the evening of August 20, 1984, C.Q. and her seven year old brother came to the defendant's home with their night clothes. C.Q. and her brother lived close to the defendant's home and had received permission from their parents to spend the evening there with the Madril children. When C.Q. and her brother arrived at the defendant's home, the defendant received them into his home and allowed them to remain overnight.

C.Q. testified that she and the other children looked at a book written in Spanish and watched television during the early

---

1. This court has jurisdiction over this appeal on the basis of the defendant's constitutional challenge to the statutory offense of sexual assault on a child by one in a position of trust. *See* § 13–4–110(1)(a), 6A C.R.S. (1987).

part of the evening. When the other children fell asleep and went to bed, C.Q. remained in the living room of the home watching television. The defendant, according to C.Q., sat next to her, and put his arm under her shirt and squeezed one of her breasts. She also testified that the defendant put his hand under her underwear, touched her vagina, and told her to open her legs. C.Q. told the defendant to stop and he did so. Although it was late in the evening when this incident occurred, C.Q. left the defendant's home and rode her bicycle to her own home where she reported to her mother that the defendant had touched her breasts.

The prosecution also called as a witness the defendant's daughter, C.M., to corroborate certain parts of the victim's testimony regarding the children's activities in the home preceding the offense. Although the prosecution questioned the defendant's daughter about whether she and C.Q. had looked at a book written in Spanish and watched television, the defendant's daughter testified that she could not remember the events on that evening. The prosecution also questioned the defendant's daughter about whether she remembered making a statement a few days later about how she and C.Q. spent the evening in question. She again stated that she did not remember any such statement. The trial court, over the defendant's objection, permitted the prosecution to call Ken Clark, a counselor with Youth and Victim Services of the Colorado Springs Police Department, to testify that the defendant's daughter told him during an interview on August 24, 1984, that she and C.Q. had looked at a book written in Spanish and had watched television with the defendant.

The defendant denied any sexual contact with C.Q. He testified that at approximately midnight he heard a scream and upon checking the children's bedroom he saw C.Q. standing next to his daughter's bed and exclaiming that she was scared and wanted to go home. According to the defendant, he offered to walk C.Q. home, but she left alone on her bicycle.

At the conclusion of the evidence the court gave the following instruction on the elements of sexual assault on a child by one in a position of trust:

The elements of the crime of Sexual Assault on a Child While in a Position of Trust as charged in this case are:

1. That the Defendant,
2. In the state of Colorado, at or about the date and place charged,
3. Knowingly,
a. Subjected another person not his spouse,
b. To any sexual contact, and
4. That person was less than fifteen years of age, and
5. The Defendant was at least four years older than that person,
6. At the time of the commission of the act and
7. The Defendant was one in a position of trust, to wit: a babysitter with respect to [C.Q.].[2]

In keeping with the statutory definition of "position of trust" in section 18-3-401(3.5), 8B C.R.S. (1986), the court gave the following instruction:

One in a "POSITION OF TRUST" includes, but is not limited to, any person who is a parent or acting in the place of a parent and charged with any of a parent['s] rights, duties, or responsibilities concerning a child, or a person who is charged with any duty or responsibility for the health, education, welfare, or supervision of a child, including foster care, child care, or family care, either independently or through another, no matter how brief, at the time of the unlawful act.

The jury was also instructed on the lesser offenses of sexual assault on a child, a class 4 felony when not committed by one in a position of trust, § 18-3-405(1), 8B C.R.S. (1986), and the class 1 misdemeanor of sexual assault in the third degree by

---

**2.** The court also instructed the jury on the meaning of "sexual contact" as defined in section 18-3-401(4), 8B C.R.S. (1986), and on the term "intimate parts" as defined in section 18-3-401(2), 8B C.R.S. (1986).

knowingly subjecting a victim to sexual contact when the victim is less than eighteen years of age and the actor is the victim's guardian or is otherwise responsible for the general supervision of the victim's welfare, § 18–3–404(1)(e), 8B C.R.S. (1986).

During the course of deliberations, the jury asked the court to clarify the term "general supervision," which related to the lesser offense of sexual assault in the third degree, and the term "charge," as used in the jury instruction defining a "position of trust." The court responded to the jury's request for a definition of "general supervision" as follows:

A person responsible for the general supervision of the welfare of one under eighteen is a person who has powers, rights, and duties similar to those of a guardian but who has not been formally appointed by the Court as a guardian nor designated by a parent as a guardian. A guardian of one under eighteen in Colorado has the same powers, rights, and duties respecting a person under eighteen that a parent would have concerning a parent's unemancipated minor child except that a guardian is not required to provide for the child from his own funds. One with general supervision is to be distinguished from one with supervision which is for a particular purpose only. For example, some guardians are appointed for limited or special purposes.

In response to the jury's question about the term "charge," the court informed the jury by written answer that "charge" means "to impose a parental right, duty, or responsibility."

The jury eventually returned a guilty verdict to sexual assault on a child by one in a position of trust. When the matter came before the court for sentencing, the court considered a presentence report which included a sentencing-grid worksheet prepared by the probation department. The court also received sentencing recommendations from the victim's family, from a personal friend of the defendant, and from the probation department. The court imposed a four-year sentence, plus one year of parole, which is the minimum sentence for a class 3 felony. This appeal followed.

We first address the defendant's constitutional challenge to the statutory offense of sexual offense on a child by one in a position of trust, next the evidentiary issue relating to the admission of evidence concerning a prior inconsistent statement made by the defendant's daughter, then the defendant's claims regarding the jury instructions, and finally the propriety of the sentence.

## II.

The defendant claims that the statutory offense of sexual assault on a child by one in a position of trust, § 18–3–405(1) and (2)(b), 8B C.R.S. (1986), violates equal protection of the laws under the Colorado Constitution, Colo. Const. art. II, sec. 25, because it carries a greater penalty than the penalty applicable to the misdemeanor offense of sexual assault in the third degree, § 18–3–404(1)(e), 8B C.R.S. (1986), while, according to the defendant, the conduct proscribed by both statutes is identical.[3] We find the defendant's claim devoid of merit.

The crime of sexual assault on a child by one in a position of trust is defined in section 18–3–405(1) and (2)(b) as follows:

(1) Any actor who knowingly subjects another not his or her spouse to any sexual contact commits sexual assault on

---

**3.** The right to equal protection of the laws is included within the Due Process Clause of the Colorado Constitution, Colo. Const. art. II, § 25. *E.g., Heninger v. Charnes,* 200 Colo. 194, 613 P.2d 884 (1980). Because the Equal Protection Clause of the United States Constitution has not been construed to extend to statutory schemes which differently punish identical conduct, *United States v. Batchelder,* 442 U.S. 114, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979), we limit our analysis of the defendant's equal protection claim to the standards applicable under the Colorado Constitution. *See People v. Marcy,* 628 P.2d 69 (Colo.1981). In so doing we note that, although the defendant casts his equal protection claim in the form of an unconstitutional application to him of the statutory proscription of sexual assault on a child by one in a position of trust, the actual basis of his claim is a facial challenge to the statutory proscription.

a child if the victim is less than fifteen years of age and the actor is at least four years older than the victim.

(2) Sexual assault on a child is a class 4 felony, but it is a class 3 felony if:

* * * * * *

(b) The actor who commits the offense on a victim is one in a position of trust with respect to the victim.

A class 3 felony, on the date of the offense in question, carried a presumptive sentence of four to eight years. § 18–1–105(1)(a)(II), 8B C.R.S. (1986).

The misdemeanor offense of sexual assault in the third degree is defined in section 18–3–404(1)(e), as follows:

(1) Any actor who knowingly subjects a victim to any sexual contact commits sexual assault in the third degree if:

* * * * * *

(e) At the time of the commission of the act, the victim is less than eighteen years of age and the actor is the victim's guardian or is otherwise responsible for the general supervision of the victim's welfare.

Sexual contact occurs when an actor knowingly touches the victim's intimate parts— that is, as pertinent here, the external genitalia or the breast of a female person. § 18–3–401(2) and (4), 8B C.R.S. (1986).

 While different statutes proscribing the identical conduct with disparate penalties violate equal protection of the laws under the Colorado Constitution, the fact that a single act may give rise to more than one criminal violation does not, by itself, create an equal protection problem. *E.g., People v. Velasquez,* 666 P.2d 567 (Colo.1983), *appeal dismissed,* 465 U.S. 1001, 104 S.Ct. 989, 79 L.Ed.2d 223 (1984); *People v. Czajkowski,* 193 Colo. 352, 568 P.2d 23 (1977). If the statutes create separate offenses based on differences that are real in fact and reasonably related to the purposes of the legislation, equal protection is not offended even though the conduct in question might violate more than one statutory proscription. *E.g., People v. Armstrong,* 720 P.2d 165 (Colo.1986); *Peo-*

*ple v. Wilhelm,* 676 P.2d 702 (Colo.1984); *People v. Owens,* 670 P.2d 1233 (Colo.1983).

Our recent decision in *People v. Oliver,* 745 P.2d 222 (Colo.1987), disposes of the defendant's equal protection challenge. In holding that the crime of sexual assault on a child by one in a position of trust, as defined by section 18–3–405(1) and (2)(b), was constitutionally distinguishable from sexual assault in the third degree, as defined by section 18–3–404(1)(e), we stated:

The two primary differences between the two types of sexual assault are (1) section 18–3–404(1)(e) [sexual assault in the third degree] requires the victim to be less than eighteen years of age and section 18–3–405 [sexual assault on a child by one in a position of trust] requires the victim to be less than fifteen years of age, and (2) section 18–3–405 [sexual assault on a child by one in a position of trust] requires the defendant to be at least four years older than the victim. These distinctions are real in fact and reasonably related to the General Assembly's purpose of protecting minor children from sexual assault. *See* Colorado Legislative Council, Report to the Gen. Assembly of 1983 [on Child Molestation, Research Publication No. 276], at 3, 5–15 (1982) (recommending section 18–3–401(3.5) and section 18–3–405(2) based on empirical studies of sexual assaults on children). We, therefore, conclude that Oliver's conviction under section 18–3–405 did not deny him equal protection of the law.

*Oliver,* at 227 (footnote omitted). We reaffirm our holding in *Oliver.*

Furthermore, the crime of sexual assault on a child by one in a position of trust applies to an offender who occupies "a position of trust" with respect to a child less than fifteen years of age. § 18–3–405(1) and (2)(b), 8B C.R.S. (1986). The statutory definition of one in the "position of trust" includes a person who is a parent, who is acting in the place of a parent and charged with any of the parent's duties or responsibilities concerning the child, or a person who at the time of the unlawful act is charged with any duty

or responsibility regarding the child's health, education, welfare, or supervision, no matter how brief that supervision might be. § 18–3–401(3.5), 8B C.R.S. (1986). These statutory categories are obviously broad enough to include doctors and other health care professionals, teachers and counselors, child care and foster care attendants, and those who assume responsibility for the temporary care of a child in the parent's absence, such as a babysitter. In contrast, the misdemeanor offense of sexual assault in the third degree, in addition to being directed to the protection of children less than eighteen years of age, encompasses sexually offensive conduct that is committed by a person who is "the victim's guardian or who is otherwise responsible for the *general* supervision of the victim's welfare." § 18–3–404(1)(e), 8B C.R.S. (1986) (emphasis added). A "guardian" would be a person who has been formally appointed by the court to act as a "guardian of the person" of the child, *see* § 19–1–103(15), 8B C.R.S. (1987 Supp.), while persons who are "generally responsible for the victim's welfare" would include persons who exercise the duties and responsibilities usually associated with legal custody. Persons "generally responsible for the victim's welfare" would include a stepparent or a relative or friend exercising general supervisory responsibilities for the child on other than a temporary basis or for a specific and limited purpose.

Although the relationship elements of sexual assault on a child by one in a position of trust, § 18–3–405(1) and (2)(b), 8B C.R.S. (1986), and sexual assault in the third degree by a guardian or a person otherwise responsible for the general supervision of the victim's welfare, § 18–3–404(1)(e), 8B C.R.S. (1986), are not mutually exclusive—under particular circumstances a person might satisfy the relationship element of both statutes—that fact does not give rise to a constitutional infirmity. When the total elements comprising each offense are considered—especially, as pertinent here, the age of the victim, the age disparity between the offender and the victim, and the particular relationship between the offender and the victim—we have no hesitation in concluding that criminal conduct prohibited by one statute is readily distinguishable from the criminal conduct prohibited by the other statute. These differences in both definition and penalty are reasonably related to the state's legitimate interest in protecting children against sexual abuse by persons who, by reason of a special relationship to a child, assume varying duties of care and responsibility toward the child.

### III.

■ The defendant next contends that reversible error occurred when the trial court admitted the testimony of Ken Clark regarding a prior inconsistent statement made by the defendant's daughter without, however, requiring the prosecution to lay the foundation for the admission of a prior inconsistent statement required by Rule 613 of the Colorado Rules of Evidence. We reject the defendant's contention.

CRE 613 states that before a prior inconsistent statement may be admitted the examiner "must call the attention of the witness to the particular time and occasion when, the place where, and the person to whom [the witness] made the statement," and further states that the witness' denial or failure to remember the prior statement "is a prerequisite for the introduction of extrinsic evidence to prove that the prior inconsistent statement was made." In contrast to this evidentiary rule, section 16–10–201, 8A C.R.S. (1986), provides as follows:

(1) Where a witness in a criminal trial has made a previous statement inconsistent with his testimony at the trial, the previous inconsistent statement may be shown by any otherwise competent evidence and is admissible not only for the purpose of impeaching the testimony of the witness, but also for the purpose of establishing a fact to which his testimony and the inconsistent statement relate, if:

(a) The witness, while testifying, was given an opportunity to explain or deny the statement or the witness is still available to give further testimony in the trial; and

(b) The previous inconsistent statement purports to relate to a matter within the witness's own knowledge.

In *Montoya v. People*, 740 P.2d 992 (Colo.1987), we recently had occasion to consider the relationship between CRE 613 and section 16–10–201. We there noted that CRE 613 is directed to situations in which a prior inconsistent statement is used for impeachment purposes only. In such circumstances, "the prior statement may be considered by the jury as an aid in judging the credibility of the witness to whom it is attributed ... and the jury should be instructed as to the limited purpose for which the prior statement is admitted." 740 P.2d at 997 (citation omitted). CRE 613, we pointed out, will have application in all civil cases and in criminal cases when the foundation requirements of section 16–10–201 have not been satisfied but the prior statement nonetheless qualifies for admission for the limited purpose of impeaching the credibility of the witness. *Id.*

We emphasized in *Montoya* that section 16–10–201, in contrast to CRE 613, creates a new rule of substantive evidence for criminal cases "by eliminating the hearsay impediment to using prior inconsistent statements for the purpose of proving the truth of the matters asserted therein so long as the statutory foundation requirements for substantive admissibility have been satisfied." *Id.* at 997–98. These foundation requirements are: (1) the witness be given an opportunity while testifying to explain or deny the statement or the witness still be available to testify in the trial; and (2) the statement purports to relate to a matter within the witness' own knowledge. § 16–10–201(1)(a) and (b), 8A C.R.S. (1986). When the foundation requirements of section 16–10–201 have been satisfied, therefore, the prior inconsistent statement is admissible for all purposes in a criminal trial. *Montoya*, 740 P.2d at 998.

In this case, the prosecution satisfied the foundation requirements of section 16–10–201 before presenting Ken Clark's testimony about the prior inconsistent statement made to him by the defendant's daughter. The defendant's daughter was available to give further testimony in the trial after the admission of her prior inconsistent statement and such statement purported to relate to a matter within her own knowledge.[4] The trial court, therefore, properly admitted the prior inconsistent statement for all purposes pursuant to section 16–10–201.

## IV.

The defendant's next claim relates to the court's instruction on the statutory element of "position of trust" for the crime of sexual assault on a child by one in a position of trust, § 18–3–405(1) and (2)(b), 8B C.R.S. (1986), and the additional instructions given by the court in response to the jury's inquiries regarding the terms "general supervision" and "charge." Again we find no merit in the defendant's claim.

█ The defendant's principal challenge to the jury instructions is that the trial court erred in not defining a "position of trust" to mean a position of "special trust" which a person occupies in relation to a child and which provides that person with an ability to exercise authority and undue influence over the child. The defendant's claim, however, ignores the statutory definition of "position of trust" in section 18–3–401(3.5), 8B C.R.S. (1986). The trial court's instruction on "position of trust" was taken verbatim from the statutory definition adopted by the legislature and was correct in all respects. *See, e.g., People v. R.V.*, 635 P.2d 892 (Colo.1981); *People v. Dago*, 179 Colo. 1, 497 P.2d 1261 (1972);

---

4. Moreover, the trial record shows that, pursuant to section 16–10–201(1)(a), the defendant's daughter was also given an opportunity during direct examination by the prosecution to explain or deny the inconsistent statement. The record also shows that, pursuant to CRE 613, her attention was specifically directed to the occasion when, a few nights after the incident in question, she was interviewed in the presence of her mother concerning the events at the defendant's home on the night in question. Notwithstanding that foundation, she did not recall making any statement about looking at a book written in Spanish when the victim spent the evening with her at her home.

*Jordan v. People,* 161 Colo. 54, 419 P.2d 656 (1966), *cert. denied,* 386 U.S. 992, 87 S.Ct. 1308, 18 L.Ed.2d 338 (1967).

■ The defendant also questions whether there was sufficient evidence to support the trial court's giving of any instruction at all on the "position of trust" element of the offense. When, however, the evidence is viewed in a light most favorable to the prosecution, *e.g., People v. Bennett,* 183 Colo. 125, 515 P.2d 466 (1973), we are satisfied that there was sufficient evidence to permit a jury to conclude beyond a reasonable doubt that the defendant voluntarily assumed "a position of trust" with respect to C.Q. when he agreed to permit her to spend the evening with his children at his home. Whether the defendant's relationship to the child is more appropriately characterized as a "babysitter" or as a temporary custodian of the victim, the critical consideration in this case is that the statutory definition of a "position of trust" is broad enough to include a person such as the defendant, who permits a young child to come into his home to spend the night with his own children. By consenting to the overnight visit, the defendant assumed responsibility for the care and supervision of C.Q. and thereby stood in a "position of trust" to the child.

■ We also find no merit in the defendant's challenge to the court's responses to the jury's inquiries regarding the meaning of the terms "general supervision," a person "otherwise responsible for the general supervision of the victim's welfare," and "charge." The court's definition of "general supervision" adequately conveyed the meaning of this statutory term and provided the jury with a reasonable line of demarcation between the term "position of trust," as applicable to the crime of sexual assault on a child by one in a position of trust, and the terms "guardian" and a person "otherwise responsible for the general supervision of the victim's welfare," as applicable to the crime of sexual assault in the third degree. We are similarly satisfied that the court's statement to the jury that the term "charge" means "to impose a parental right, duty, or responsi-

bility" adequately conveyed the meaning of that term as used in the court's prior definition of "position of trust."

We therefore find no error in the instructions submitted to the jury or in the court's responses to the jury's requests for clarification of various terms used in the instructions.

## V.

■ We turn to the defendant's final contention, which is that the trial court abused its discretion in imposing a sentence of four years. The defendant centers his contention on the asserted failure of the court to consider his character and prospects for rehabilitation and the court's consideration of a sentencing-grid worksheet at arriving at its sentencing decision. A review of the record discloses no abuse of discretion in this case.

In imposing a sentence a court must consider a number of factors bearing on the sentencing decision and arrive at a synthesis that is reflective of the interests of society and the defendant. *Rocha v. People,* 713 P.2d 350 (Colo.1986); *People v. Martinez,* 628 P.2d 608 (Colo.1981). The basic factors implicated in any sentencing decision include the gravity of the offense, the extent of injury caused to the victim, the defendant's societal history and prior criminal record, the risk of future criminal conduct posed by the defendant, and the potential of the defendant for effective rehabilitation. The court must balance these and any other pertinent factors and tailor its sentence in a manner consistent with the statutory purposes of sentencing. Those purposes, which are set forth in section 18–1–102.5, 8B C.R.S. (1986), are:

(a) To punish a convicted offender by assuring the imposition of a sentence he deserves in relation to the seriousness of his offense;

(b) To assure the fair and consistent treatment of all convicted offenders by eliminating unjustified disparity in sentences, providing fair warning of the nature of the sentence to be imposed, and establishing fair procedures for the imposition of sentences;

(c) To prevent crime and promote respect for the law by providing an effective deterrent to others likely to commit similar offenses; and

(d) To promote rehabilitation by encouraging correctional programs that elicit the voluntary cooperation and participation of convicted offenders.

In this case the sentencing court had the benefit of a thorough presentence report which detailed the circumstances of the offense and the defendant's social history. The presentence report also contained a sentencing-grid worksheet and a sentence recommendation from the probation department that the defendant be granted probation. The court also considered comments from the victim's family and a favorable recommendation from a friend of the defendant.

The record shows that the sentencing court engaged in a careful analysis of the various factors called to its attention and arrived at a sentence that was consistent with the purposes of the Colorado Criminal Code with respect to sentencing. That the sentencing court considered a sentencing-grid worksheet among the many other factors brought to its attention in no way impugns the propriety of the sentence ultimately imposed in this case. The court had the right to consider that information as well as any other information pertinent to a proper sentencing decision. We therefore find no abuse of discretion in the court's imposition of a four-year sentence, plus one year of parole, for the class 3 felony of sexual assault on a child by one in a position of trust.

The judgment is accordingly affirmed.