2013 CO 70

**The PEOPLE of the State of
Colorado, Petitioner**

**v.**

**Neil Eugene ROGGOW, Respondent**

**Supreme Court Case No. 11SC597**

Supreme Court of Colorado.

December 9, 2013

Rehearing Denied January 13, 2014

Attorneys for Petitioner:John W. Suthers, Attorney General, Jennifer L. Ward, Assistant Attorney General, Katharine J. Gillespie, Assistant Attorney General, Denver, Colorado

Attorney for Respondent:Jonathan S. Willett, Denver, Colorado

JUSTICE MÁRQUEZ delivered the Opinion of the Court

¶ 1 A jury convicted Defendant Neil Eugene Roggow of sexual assault on a child by one in a position of trust, in violation of section 18–3–405.3, C.R.S. (2013), based on his unlawful sexual contact with an eight-year-old girl. The court of appeals reversed Roggow's conviction, concluding that the evidence was insufficient to prove that Roggow was in a position of trust with respect to the victim because he was not charged with her care or supervision when the unlawful acts occurred. *People v. Roggow*, No. 09CA1719, slip op. at 7–8, 2011 WL 2199694 (Colo.App. May 26, 2011) (not published pursuant to C.A.R. 35(f)).

¶ 2 We granted the People's petition for a writ of certiorari[1] and now reverse the court of appeals. We hold that, for purposes of section 18–3–405.3, a defendant need not be expressly charged with a particular duty or responsibility over the child at the time of the unlawful act in order to occupy a position of trust. Rather, a defendant may occupy a position of trust with respect to the victim where an existing relationship or other conduct or circumstances establish that the defendant is entrusted with special access to the child victim. Here, we conclude that the evidence was sufficient for a jury to conclude that Roggow was in a position of trust with respect to the victim at the time of the unlawful acts.

## I. Background

¶ 3 At trial, the evidence established that Roggow was the landlord of the house rented by the family of A.B., the eight-year-old victim. Roggow had maintained an ongoing and friendly relationship with the family for over two years. Because Roggow lived only a few blocks away, A.B.'s parents hand-delivered the monthly rent to Roggow and were often invited into Roggow's home to socialize. In addition, A.B.'s older brothers (ages thirteen and fourteen) sometimes helped Roggow with chores around his house.

¶ 4 On June 24, 2008, the day of the assault, A.B.'s father asked Roggow to come to the house to fix the upstairs bathroom shower. When Roggow arrived at the house, A.B. and her older brothers were home alone because their parents were at work and school was not in session for the summer. Roggow decided he needed a replacement part for the shower and asked the children if they would like to accompany him to the hardware store. A.B. and her oldest brother volunteered to join Roggow, and the three left in Roggow's truck.

¶ 5 At the hardware store, Roggow told the brother to get something at the end of the store aisle. When the brother walked away, Roggow pretended to reach for an item on the shelf and touched A.B.'s breast. Later, while standing in the check-out line, Roggow touched A.B.'s buttocks while telling

---

1. We granted certiorari review on the following issue:

    Whether the court of appeals erred in holding that a position of trust does not exist where a defendant voluntarily assumes responsibility for the victim, but instead required direct evidence that the parent gave specific permission to or charged the defendant with the supervision and welfare of the victim.

her to move forward with the line. Roggow then drove the children to a second hardware store. There, Roggow told the brother to go into the store to check on the price of a part. While alone with A.B. in the truck, Roggow explained to A.B. that men would soon want to engage in sexual acts with her and touch her intimate body parts. He told A.B. that, in the future, he would also like to see her intimate body parts. A.B. testified that at some point while Roggow was driving, he touched her upper thigh.

¶ 6 While the children were away with Roggow, A.B.'s father returned home. The brother who had remained at home told the father that his siblings had left with Roggow. At trial, the father testified that he was not concerned when he learned this information because Roggow had previously taken the boys away from home and paid them to do yard work.

¶ 7 After Roggow, A.B., and the oldest brother returned to the house, Roggow gave A.B. a dollar and told her to keep their discussion secret. Roggow continued to work on the shower for approximately thirty minutes. After Roggow left, A.B. told her father what Roggow had done. The father immediately confronted Roggow. According to the father's testimony, Roggow admitted to the father that he had talked to A.B. about her intimate body parts, but explained he was only trying to educate her and that he spoke to all of "his girls" that way. A.B.'s father called the police and Roggow was arrested. A.B.'s father testified that, before this incident, he trusted Roggow and considered him a friend.

¶ 8 The People charged Roggow with sexual assault on a child by one in a position of trust, in violation of sections 18–3–405.3(1), (2)(a). The jury found Roggow guilty as charged, and he was sentenced to probation for a term of twenty-years-to-life.

¶ 9 Roggow appealed his conviction, arguing that the evidence was insufficient to support the jury's verdict that he occupied a position of trust with respect to A.B. at the time of the assault. A divided division of the court of appeals agreed and reversed Roggow's conviction. *Roggow,* slip op. at 1. The majority reasoned that, to establish that Roggow was in a position of trust with respect to the victim, the prosecution was required to prove that he was charged with the duty or responsibility of providing temporary care or supervision of the victim. *Id.* at 4. The majority concluded that the evidence at trial was insufficient to establish a position of trust because Roggow was charged only with the responsibility to fix the shower, and the record contained no evidence that A.B.' s father charged Roggow with supervising the children or that he gave A.B. permission to go anywhere with Roggow. *Id.* at 5–6. The majority further noted the lack of evidence suggesting that Roggow had a preexisting supervisory relationship with A.B. *Id.* at 8.

¶ 10 In dissent, Judge Booras disagreed with the majority's conclusion that Roggow had not been "charged" with supervisory responsibility of A.B. simply because the parents had not expressly charged him with such responsibility. Rather, "the jury could have made a reasonable inference that the brother was comfortable leaving his eight-year-old sister unattended in a public place because she was standing next to a familiar person whom [he] reasonably trusted to supervise and protect [A.B.'s] welfare." *Id.* at 16 (Booras, J., dissenting). Thus, Judge Booras concluded that the evidence was sufficient to establish that Roggow was in a position of trust with respect to A.B. at the time of the assault. *Id.* at 17.

¶ 11 We granted the People's petition for a writ of certiorari and now reverse.

## II.   Standard of Review

¶ 12 We review de novo the court of appeals' interpretation of section 18–3–401(3.5), C.R.S. (2013), which defines "position of trust." *People v. Simon,* 266 P.3d 1099, 1106 (Colo.2011). In construing the statutory definition of "position of trust," we seek to effectuate the intent of the General Assembly, which is charged with defining criminal conduct and establishing the elements of a crime. *Build It & They Will Drink, Inc. v. Strauch,* 253 P.3d 302, 304 (Colo.2011); *Gorman v. People,* 19 P.3d 662, 665 (Colo.2000). We begin with the plain language of the statute, reading the words

and phrases in context and construing them according to their common usage. *Strauch,* 253 P.3d at 304. If the statutory language is clear and unambiguous, we apply it as written without resort to further statutory analysis. *Id.*

■ ¶ 13 This court reviews questions relating to sufficiency of the evidence de novo. *Dempsey v. People,* 117 P.3d 800, 807 (Colo. 2005). In so doing, we must determine whether the relevant evidence, when viewed as a whole in the light most favorable to the prosecution, is sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charges beyond a reasonable doubt. *Oram v. People,* 255 P.3d 1032, 1038 (Colo.2011); *People v. Lehnert,* 163 P.3d 1111, 1115 (Colo.2007).

### III. Analysis

¶ 14 The People contend that, in reversing Roggow's conviction, the court of appeals erroneously narrowed the statutory definition of "position of trust" in section 18–3–401(3.5). Specifically, the People argue that, under the court of appeals' interpretation of section 18–3–401(3.5), a defendant does not occupy a position of trust with respect to a victim unless a parent gives specific permission to a defendant to supervise a child or expressly charges a defendant with supervisory responsibility over a child. The People contend that the statutory language and Colorado case law refute such an interpretation.

■ ¶ 15 We conclude that the statutory definition of "position of trust" in section 18–3– 401(3.5) expressly includes two general categories of persons: (1) persons who are parents or acting in the place of parents, and (2) persons who are charged with a duty or responsibility for the health, education, welfare, or supervision the child. However, these categories are only illustrative, and the broad definition of position of trust adopted by the legislature "is not limited to" these categories. Rather, these general categories reflect the General Assembly's overarching intent to target those offenders who are entrusted with special access to a child victim and who exploit that access to commit an offense against the child. Thus, we hold that for purposes of section 18–3–405.3, a defen-

dant need not be expressly charged with a particular duty or responsibility over the child at the time of the unlawful act in order to occupy a position of trust. Rather, a defendant may occupy a position of trust with respect to the victim where an existing relationship or other conduct or circumstances establish that the defendant is entrusted with special access to the child victim. Here, we conclude that the evidence was sufficient for a jury to conclude that Roggow was in a position of trust with respect to the victim at the time of the unlawful acts.

### A.

¶ 16 A person commits sexual assault on a child by one in a position of trust in violation of section 18–3–405.3(1) when he or she "knowingly subjects another not his or her spouse to any sexual contact . . . if the victim is a child less than eighteen years of age and the actor committing the offense is one in a *position of trust* with respect to the victim." (emphasis added).

¶ 17 We note at the outset that "the definition of 'position of trust' adopted by the legislature is a broad one." *Pellman v. People,* 252 P.3d 1122, 1125 (Colo.2011). Section 18–3–401(3.5) provides that one in a position of trust includes, but is not limited to, two general categories of persons:

> One in a "position of trust" includes, but is not limited to, [1] any person who is a parent or acting in the place of a parent and charged with any of a parent's rights, duties, or responsibilities concerning a child, including a guardian or someone otherwise responsible for the general supervision of a child's welfare, or [2] a person who is charged with any duty or responsibility for the health, education, welfare, or supervision of a child, including foster care, child care, family care, or institutional care, either independently or through another, no matter how brief, at the time of the unlawful act.

■ ¶ 18 The first general category identified by section 18–3–401(3.5) includes "any person who is a parent or acting in the place of a parent and charged with any of a par-

ent's rights, duties, or responsibilities concerning a child." This category encompasses both parents and persons who regularly watch over and care for a child, such as grandparents, other relatives, close friends, or a parent's boyfriend or girlfriend.

¶ 19 The second general category includes "a person who is charged with any duty or responsibility for the health, education, welfare, or supervision of a child, including foster care, child care, family care, or institutional care, either independently or through another." *Id.* This category broadly encompasses those persons charged, independently or through another, with any duty or responsibility for the health, education, welfare, or supervision of a child for any amount of time. *People v. Johnson,* 167 P.3d 207, 209 (Colo.App.2007). These persons usually differ from those in the first category in that they generally have access to the child only for limited periods of time. We have observed that this category is "obviously broad enough to include doctors and health care professionals, teachers and counselors, child care and foster attendants, and those who assume responsibility for the temporary care of a child in the parent's absence, such as a babysitter." *People v. Madril,* 746 P.2d 1329, 1334 (Colo.1987).

¶ 20 Although the statute identifies these two general categories, the definition of position of trust "includes, but is not limited to" these categories. § 18–3–401(3.5). The phrase "includes, but is not limited to" suggests an "expansion or enlargement" and a "broader interpretation." *Ruff v. Indus. Claim Appeals Office,* 218 P.3d 1109, 1113 (Colo.App.2009); *Williams v. Teck,* 113 P.3d 1255, 1258–59 (Colo.App.2005). As we observed in *Pellman,* the statutory definition makes plain that the examples listed are "only illustrative." 252 P.3d at 1125.

¶ 21 These categories generally reflect that the statutory definition applies to persons who are entrusted with special access to a child. As the court of appeals observed in *People v. Martinez,* the legislature has considered that "a child is more vulnerable to abuse if an offender is known to the child or is entrusted with the care of a

child by one who is otherwise responsible for that care." 51 P.3d 1046, 1052 (Colo.App. 2001), *rev'd on other grounds,* 74 P.3d 316 (Colo.2003). In other words, "[a] person in a position of trust is more likely to be alone with a child, successfully lure a child to a place of isolation, or manipulate a child to submit to abuse or keep it secret." *Pellman,* 252 P.3d at 1127. In this regard, the statutory definition encompasses adults, who, by virtue of their familiarity with a victim or a victim's family, are entrusted with "special access" to a child. *See id.* ("Our interpretation today recognizes that the *special access* to the child that a defendant has gained through occupying a position of trust may continue even where a defendant is not acting pursuant to a discrete supervisory task.") (emphasis added). Such access to a child presupposes trust. To hold otherwise would limit the statute's otherwise broad definition of "position of trust" and undermine its larger objective to protect vulnerable children from adult offenders uniquely situated to exploit those children.

¶ 22 Therefore, we conclude that a defendant may occupy a position of trust with respect to the victim where an existing relationship or other conduct or circumstances establish that the defendant is entrusted with special access to the child victim.

### B.

¶ 23 The court of appeals held that a position of trust requires proof that the defendant was charged with the duty and responsibility of providing temporary care or supervision of the victim. *Roggow,* slip op. at 8. It concluded that the evidence was insufficient to establish that Roggow held a position of trust with respect to A.B. because the record did not include evidence that A.B.'s father charged Roggow with any duty to babysit or otherwise supervise her or the other children while he was fixing the shower. *Id.* at 5.

¶ 24 We disagree that a defendant may occupy a position of trust only where the defendant has been expressly charged with supervisory responsibility over the child victim. Section 18–3–401(3.5) provides several examples of individuals (such as persons who

provide "foster care, child care, family care, or institutional care") whose supervisory duties arise naturally with respect to a child. The statute also provides that responsibility can be charged "either independently or through another." § 18–3–401(3.5). For example, certain professionals, such as teachers or doctors, may be "independently" charged with responsibility for a child, such that a parent or guardian need not expressly charge the professional with that responsibility. In short, the statute contemplates that a defendant may hold a position of trust with respect to a victim without having been expressly charged with supervisory responsibility over the child.

¶ 25 Colorado case law supports our conclusion that a position of trust is not limited to circumstances where a parent expressly charges another with supervisory responsibility. Rather, this case law reflects that a defendant may hold a position of trust with respect to a victim where an existing relationship or other circumstances establish that the defendant is entrusted with special access to the victim.

¶ 26 For example, in *People v. Madril*, 746 P.2d 1329, 1330 (Colo.1987), the victim's parents did not expressly charge the defendant with supervisory responsibility over their child. Nonetheless, we concluded that the defendant was in a position of trust based on the circumstances under which the defendant was granted special access to the child. *Id.* at 1336. In that case, the defendant lived near the home of the nine-year-old victim. *Id.* at 1330. The victim's parents gave the victim and her younger brother permission to spend the night at the defendant's house with his children. *Id.* That evening, when the other children went to bed, the victim remained in the living room with the defendant and he sexually assaulted her. *Id.* We concluded that sufficient evidence supported the defendant's conviction of sexual assault on a child while in a position of trust, in violation of section 18–3–405.3(1). We explained, "[b]y consenting to the overnight visit, the defendant assumed responsibility for the care and supervision of [the victim] and thereby stood in a 'position of trust' to the child." *Id.* at 1336. We further noted that "the critical

consideration in this case is that the statutory definition of a 'position of trust' is broad enough to include a person such as the defendant, who permits a young child to come into his home to spend the night with his own children." *Id.* Although the victim's parents extended no express charge of supervisory responsibility to the defendant, he still was in a position of trust because he was given special access to the child when the parents permitted the child to stay the night at his home.

¶ 27 More recently, in *Pellman v. People*, 252 P.3d 1122, 1125 (Colo.2011), we suggested that an existing relationship could also evidence a position of trust. We held that the defendant occupied a position of trust where he had gained special access to a child through an ongoing and continuous supervisory relationship, even though he was not performing any specific supervisory task at the time of the unlawful acts. *Id.* The defendant in that case was a family friend and a former Sunday school teacher of the fifteen-year-old victim. *Id.* at 1126. The victim went with her parents' permission to the defendant's home on several occasions to ride horses. *Id.* On several other occasions, the victim met with the defendant without her parents' knowledge or permission; during those encounters, the defendant sexually assaulted the victim. *Id.* We recognized in *Pellman* that a defendant occupies a position of trust where the defendant gains special access to a child by virtue of a pre-existing relationship with the child's family, despite the absence of a specific charge of supervisory duties at the time of the unlawful act.

¶ 28 In *People v. Luman*, 994 P.2d 432, 438 (Colo.App.1999), the court of appeals similarly concluded that sufficient evidence supported the jury's finding that the defendant was in a position of trust with respect to his niece based on circumstances establishing that: the defendant lived in the same residence with the victim and her family; the defendant contributed to the household income; the victim spent hours alone with the defendant in his room; and neither the victim's mother nor any other individual intervened when the victim was alone with the defendant.

¶ 29 Whether a defendant is in a position of trust will depend on the facts in a particular case, and we decline to adopt an exhaustive definition to cover every conceivable situation in which a position of trust might arise. However, we disagree with the court of appeals' interpretation that the statutory definition in section 18–3–401(3.5) requires the prosecution to prove that a defendant was expressly charged with supervisory responsibility over the victim at the time of the unlawful act. Rather, we hold that a defendant may occupy a position of trust with respect to the victim where an existing relationship or other conduct or circumstances establish that the defendant is entrusted with special access to the child victim.

## C.

¶ 30 In this case, we conclude that the record contains sufficient evidence to support the jury's finding that Roggow was in a position of trust with respect to A.B. at the time of the sexual assault. Although A.B.'s father did not expressly charge Roggow with supervisory care of A.B., the family's relationship with Roggow and the circumstances present on the day of the assault reflect that Roggow was entrusted with special access to A.B. such that he was in a position of trust at the time of the unlawful acts.

¶ 31 The evidence at trial established that Roggow had been the family's landlord for over two years. Roggow lived a few blocks away and was on a first-name basis with the family. A.B.'s parents hand-delivered the rent to Roggow's house and had been invited into Roggow's home on several occasions to socialize with Roggow and his wife. A.B.'s parents had previously permitted Roggow to take their two boys to do chores around Roggow's house. Testimony at trial indicated that the children were familiar with Roggow and considered him a family friend.

¶ 32 In addition to the evidence of this ongoing relationship, the circumstances on the day of the assault further reflect that Roggow was entrusted with special access to the children. Importantly, A.B.'s father allowed Roggow to work for several hours at the house, knowing the children were home alone. Moreover, testimony established that in light of their existing relationship with Roggow, A.B. and her brother volunteered to go with Roggow to the hardware store. Indeed, that A.B.'s father was unconcerned when he learned that Roggow had taken her and her brother to the hardware store is evidence that he trusted Roggow with his children. Viewed as a whole in the light most favorable to the prosecution, this evidence was sufficient for a jury to reasonably conclude that Roggow occupied a position of trust with respect to A.B. at the time of the sexual assault.

¶ 33 Although it is undisputed that Roggow was not expressly charged with any supervisory duty over the victim at the time of the unlawful act, it does not follow that Roggow did not occupy a position of trust. Like the defendant in *Madril*, 746 P.2d at 1330, Roggow was entrusted with special access to the child when A.B.' s father expressly invited Roggow to come to the house while the children were there alone. Indeed, in this respect, the evidence in this case is even stronger than in *Pellman*, 252 P.3d at 1126, where the victim's parents had not given the defendant permission to be with the victim at the time of the assault, and in fact, were unaware that their daughter was alone with the defendant.

¶ 34 Accordingly, on this record, we conclude that the evidence was sufficient to support the jury's finding that Roggow was in a position of trust with respect to A.B. at the time of the sexual assault.

## IV. Conclusion

¶ 35 We hold that an express charge of supervisory responsibility over a child is not required to establish a position of trust under section 18–3–405.3. Rather, a defendant may occupy a position of trust with respect to the victim where an existing relationship or other conduct or circumstances establish that the defendant is entrusted with special access to the child victim. Applying this standard, we conclude the evidence is sufficient to support the jury's finding that Roggow occupied a position of trust with respect to A.B. at the

time of the unlawful act. Accordingly, we reverse the holding of the court of appeals and remand with directions to reinstate the conviction.