Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us. Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
June 15, 2020

**2020 CO 53**

**No. 18SC765, *Manjarrez v. People*—Criminal Acts Against Children—Status as to Child—Position of Trust.**

In this case, the supreme court considers whether there was sufficient evidence for the jury to convict the defendant of sexual assault on a child by one in a position of trust, in violation of section 18-3-405.3(1), C.R.S. (2019). Section 18-3-401(3.5), C.R.S. (2019), provides that one in a "position of trust" includes but is not limited to a person charged with any duty or responsibility for the welfare or supervision of a child. Colorado case law has made clear that this duty or responsibility need not be express but can be implied from the circumstances. In *People v. Roggow*, 2013 CO 70, ¶ 15, 318 P.3d 446, 450, the supreme court held that "a defendant may occupy a position of trust with respect to the victim where an existing relationship or other conduct or circumstances establish that the defendant is entrusted with special access to the child victim." The supreme court now clarifies that a defendant's "special access" to the victim by virtue of "an existing relationship or other conduct or circumstances" is evidence of an implied

duty or responsibility for the welfare or supervision of the victim during those periods of special access.

Because the evidence at trial, viewed in the light most favorable to the prosecution, established that the defendant was entrusted with special access to the victim by virtue of his relationship with her family and that he was implicitly responsible for her welfare and supervision at the time of the assault, the supreme court affirms the judgment of the court of appeals affirming the defendant's conviction for sexual assault on a child by one in a position of trust.

**2020 CO 53**

**Supreme Court Case No. 18SC765**
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 17CA326

**Petitioner:**

Richard Andrew Manjarrez,

v.

**Respondent:**

The People of the State of Colorado.

**Judgment Affirmed**
*en banc*
June 15, 2020

**Attorneys for Petitioner:**
Ridley, McGreevy & Winocur, PC
Robert T. Fishman
 *Denver, Colorado*

**Attorneys for Respondent:**
Philip J. Weiser, Attorney General
Melissa D. Allen, Senior Assistant Attorney General
 *Denver, Colorado*

**JUSTICE MÁRQUEZ** delivered the Opinion of the Court.

¶1     Forty-five-year-old Richard Andrew Manjarrez hired his friends' teenage daughter to clean his house. Manjarrez had known the girl's family for several years, had dined and socialized with them often, and had even taken the girl's younger sister with his family on a weeklong vacation. The girl's parents had consented to the housecleaning arrangement because they considered Manjarrez a family friend and trusted him. On the girl's third cleaning visit, however, Manjarrez kissed her, touched her breast, and digitally penetrated her. He then drove her home.

¶2     A jury convicted Manjarrez of sexual assault on a child by one in a position of trust in violation of section 18-3-405.3(1), C.R.S. (2019), and the court of appeals affirmed the conviction. Manjarrez acknowledges that the sexual contact took place but argues that the evidence was insufficient to show that he occupied a position of trust with respect to the victim because there was no evidence that he had any *express* duty of supervision over her.

¶3     One in a "position of trust" includes but is not limited to a person charged with any duty or responsibility for the welfare or supervision of a child. Our case law has made clear that this duty or responsibility need not be express but can be implied from the circumstances. In *People v. Roggow*, 2013 CO 70, ¶ 15, 318 P.3d 446, 450, we held that "a defendant may occupy a position of trust with respect to [a] victim where an existing relationship or other conduct or circumstances

2

establish that the defendant is entrusted with special access to the child victim." We clarify that holding today by explaining that a defendant's "special access" to the victim by virtue of "an existing relationship or other conduct or circumstances" is evidence of an implied duty or responsibility for the welfare or supervision of the victim during those periods of special access.

¶4 Here, consistent with the statutory definition of the term, the jury was instructed that one in a position of trust includes, among others, a person who is charged with any duty or responsibility for the welfare or supervision of a child. The evidence at trial, viewed in the light most favorable to the prosecution, established that Manjarrez was entrusted with special access to the victim by virtue of his relationship with her family and that he was implicitly responsible for her welfare and supervision while she was at his home to clean. Accordingly, we affirm the judgment of the court of appeals, albeit by different reasoning.

## I. Facts and Procedural History

¶5 Manjarrez and the victim's family lived in the same neighborhood. They met and became family friends when the victim was twelve years old. Over the years that followed, Manjarrez and the victim's family frequently went to the community pool and had dinner together. They took a ski trip together, hosted a Thanksgiving dinner together, and Manjarrez even took the victim's younger sister with his family on a weeklong vacation to Wisconsin to visit mutual family

3

friends. The victim testified that Manjarrez, who worked as an airline pilot, twice bought small gifts for her from the cities he visited.

¶6 When the victim was sixteen years old, Manjarrez asked her parents if he could hire her to clean his house periodically. The victim had never cleaned houses before, but her parents agreed she could take the job. The victim's parents testified that they would not have allowed her to clean just anyone's house but permitted their daughter to work for Manjarrez because he was a trusted family friend and they expected her to be safe in his home. The victim's mother testified that she expected Manjarrez would supervise the victim and that he would be responsible for the victim's welfare while she was at his house. After obtaining the parents' consent, Manjarrez contacted the victim directly, and she agreed to clean his house. The victim testified that although she probably would not clean the house of a stranger, she viewed Manjarrez as a "family friend" and "an adult that [she] trusted," and that she felt safe going to his home. The victim also testified that she would have gone to Manjarrez for assistance if she were hurt while cleaning.

¶7 The victim cleaned Manjarrez's house three times. On the first visit, Manjarrez showed the victim how he wanted the cleaning done. Nothing unusual happened. The victim cleaned the house, and Manjarrez paid her and drove her home. However, during her second cleaning visit, Manjarrez commented that he

4

would date the victim if he were still in high school. The comment "seemed a little off" to the victim, but she brushed it off. Later, while the victim cleaned the kitchen, Manjarrez watched a television show depicting a homeowner who hired a house cleaner who had sex with the homeowner instead of cleaning the house. The victim testified that Manjarrez remarked, "I don't know why you don't do that." This comment made the victim uncomfortable, but she returned to his house after this incident because she trusted Manjarrez and "thought he was just trying to make a joke [that went] too far."

¶8 Five days after her seventeenth birthday, the victim cleaned Manjarrez's house a third time. He picked her up from school, drove her to the store to get cleaning supplies, and took her to his house. When the victim finished, Manjarrez was sitting on the couch, watching a movie. The victim testified that Manjarrez suggested that she watch the end of the movie with him. While the victim sat on the couch next to Manjarrez, he put his arm around her, reached into her shirt and touched her breast, kissed her, digitally penetrated her, and lifted her onto his lap and moved her up and down against his body.

¶9 Manjarrez then drove the victim home. The victim testified that Manjarrez said, "Don't tell your parents. I'll get in so much trouble. You might have to come over sooner than you normally do." Immediately after she got home, the victim told her mother what happened, and her father angrily called Manjarrez. After

they got off the phone, Manjarrez texted the victim's father an apology for "cross[ing] the line":

> I know you and [the victim's mother] are angry. I want [t]o give my sincerest apologies to you and [the victim's mother] and especially [the victim]. You guys are good friends and I definitely crossed the line. I will most definitely keep my distance, I didn't mean to hurt anyone, and I['m] sorry that I did. I'm being honest when I tell you I didn't have intercourse with her. I know that doesn't make it easier, but I will do what I can [t]o make it up to you and [the victim's mother]. Again, I am so sorry, and I felt bad even when it was happening that's why [I] stopped.

That evening, the victim's family called the police, who came, investigated, and arrested Manjarrez.

¶10 Manjarrez was charged with sexual assault on a child by one in a position of trust.[1] He acknowledged that he had sexual contact with the victim but disputed that he occupied a position of trust with respect to her.

¶11 At trial, the prosecution argued that Manjarrez used the close family friendship "to have the kind of access that he had to her," and that Manjarrez "created this situation where [the victim] was going to be alone in his house" by suggesting the housecleaning arrangement to the victim's parents and obtaining their consent. Once the arrangement was set, the prosecution argued, Manjarrez

---

[1] Manjarrez was also charged with unlawful sexual conduct, but the prosecution dismissed that charge before trial.

"independently charged himself with a duty or responsibility for the welfare or supervision" of the victim when he drove her to his house, stayed at the house alone with her while she cleaned, then drove her home.

¶12 In contrast, the defense argued that Manjarrez was not a close family friend but merely a peripheral figure who did not spend much time with the victim and her family. The defense characterized Manjarrez's relationship with the victim as nothing more than a flexible employment arrangement that gave the victim an easy way to make extra money. Manjarrez took the stand and acknowledged picking the victim up and driving her home on the second and third cleaning dates and feeding her dinner on the first and third cleaning dates. He testified, however, that the victim initiated the sexual contact by laying across his lap, kissing him, lifting her dress, and straddling him.

¶13 Consistent with the statutory definition of one in a position of trust, *see* § 18-3-401(3.5), C.R.S. (2019), the jury was instructed that one in a position of trust

> includes, but is not limited to, any person who is a parent or acting in the place of a parent and charged with any of a parent's rights, duties, or responsibilities concerning a child, including a guardian or someone otherwise responsible for the general supervision of a child's welfare, or a person who is charged with any duty or responsibility for the health, education, welfare, or supervision of a child, including foster care, child care, family care, or institutional care, either independently or through another, no matter how brief, at the time of an unlawful act.

¶14 The jury convicted Manjarrez. He then moved for judgment notwithstanding the verdict, arguing that he did not occupy a position of trust because there was insufficient evidence that he was charged with any duty of supervision over the victim. The district court rejected the motion, and Manjarrez was sentenced to sex offender intensive supervised probation for ten years to life, with sixty days in jail as a condition of probation. Manjarrez appealed.

¶15 In an unpublished opinion, a division of the court of appeals affirmed Manjarrez's conviction. *People v. Manjarrez*, No. 17CA0326, ¶ 1 (Sept. 20, 2018). Relying on this court's decision in *Roggow*, the division rejected Manjarrez's argument that the statutory definition of position of trust requires an express charge of supervisory responsibility over the victim. *Id.* at ¶ 12.

¶16 In a special concurrence, Judge Berger agreed that Manjarrez's argument was foreclosed by *Roggow*, reasoning that Manjarrez had access to the victim only because of his status as a family friend. *Id.* at ¶ 29 (Berger, J., specially concurring). He therefore agreed that Manjarrez was entrusted with "special access" that he exploited to engage in sexual contact with the child victim. *Id.*

¶17 However, Judge Berger questioned whether our holding in *Roggow* meant "there is no requirement at all of any duty of supervision by the defendant with respect to the child[.]" *Id.* at ¶ 30. He observed that the facts in *Roggow* demonstrated that the defendant there exercised, expressly or impliedly, a duty of

8

supervision over the victim at the time of the assault when he transported her in his truck to a hardware store. *Id.* at ¶ 31. Judge Berger opined that in this case, Manjarrez had not assumed a similar supervisory role, emphasizing that the victim here was an older teenager. *Id.* at ¶¶ 32–34.

¶18 We granted Manjarrez's petition for a writ of certiorari to review the court of appeals' decision.[2]

## II. Standard of Review

¶19 We review de novo questions of statutory interpretation. *Roggow*, ¶ 12, 318 P.3d at 449. In construing the statutory definition of "position of trust," we seek to effectuate the General Assembly's intent. *Id.* We begin with the plain language of the statute, reading the words and phrases in context and construing them according to their common usage. *Id.*, 318 P.3d at 449–50. If the statutory language is clear and unambiguous, we apply it as written without resorting to other means of discerning legislative intent. *Id.*

---

[2] We granted certiorari to review the following issue:

> Whether "special access" to a child—standing alone—is sufficient to prove a position of trust under section 18-3-401(3.5), and *People v. Roggow*, 318 P.3d 446 (Colo. 2013), or whether there must be proof that a defendant also had some duty of supervision over a child in order to find that the defendant occupied a position of trust.

¶20     We review the sufficiency of the evidence de novo. *Id.* at ¶ 13, 318 P.3d at 450. In so doing, we must determine whether the relevant evidence, when viewed as a whole in the light most favorable to the prosecution, is sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charges beyond a reasonable doubt. *Id.*

### III.  Legal Principles

¶21     A person commits sexual assault on a child by one in a position of trust when he or she "knowingly subjects another not his or her spouse to any sexual contact . . . if the victim is a child less than eighteen years of age and the actor committing the offense is one in a position of trust with respect to the victim." § 18-3-405.3(1). Unlike the sexual assault on a child statute, *see* § 18-3-405, C.R.S. (2019), the sexual assault on a child by one in a position of trust statute makes no distinction between victims who are younger children and those who are older teens; it protects all children until they turn eighteen, *see* § 18-3-405.3(1).

¶22     The definition of "position of trust" adopted by the legislature "is a broad one." *Pellman v. People*, 252 P.3d 1122, 1125 (Colo. 2011). Section 18-3-401(3.5) provides as follows:

> One in a "position of trust" includes, but is not limited to, [1] any person who is a parent or acting in the place of a parent and charged with any of a parent's rights, duties, or responsibilities concerning a child, including a guardian or someone otherwise responsible for the general supervision of a child's welfare, or [2] *a person who is charged with any duty or responsibility for the* health, education, *welfare, or*

10

*supervision of a child,* including foster care, child care, family care, or institutional care, *either independently or through another, no matter how brief, at the time of an unlawful act.*

(Emphases added.)

¶23    In *Roggow*, we observed that this definition expressly includes two general categories of persons.  The first category encompasses "parents and persons who regularly watch over and care for a child, such as grandparents, other relatives, close friends, or a parent's [partner]."  *Roggow*, ¶ 18, 318 P.3d at 451.  The second category encompasses persons who "generally have access to the child only for limited periods of time."  *Id.* at ¶ 19, 318 P.3d at 451.  We noted, however, that these categories are "only illustrative" and that the legislature's broad definition of position of trust "is not limited to" these categories.  *Id.* at ¶ 15, 318 P.3d at 450.  Rather, we explained that these general categories "reflect the General Assembly's overarching intent to target those offenders who are entrusted with special access to a child victim and who exploit that access to commit an offense against the child."  *Id.*; *see also Pellman*, 252 P.3d at 1127 (noting that "the legislature focused on those instances in which a defendant has gained access to a child through the position of trust he or she holds").

¶24    Importantly, our legislature has recognized that "a child is more vulnerable to abuse if an offender is known to the child or is entrusted with the care of the child by one who is otherwise responsible for that care."  *People v. Martinez*, 51 P.3d

11

1046, 1052 (Colo. App. 2001), *rev'd on other grounds*, 74 P.3d 316 (Colo. 2003). "In other words, '[a] person in a position of trust is more likely to be alone with a child, successfully lure a child to a place of isolation, or manipulate a child to submit to abuse or keep it secret.'" *Roggow*, ¶ 21, 318 P.3d at 451 (quoting *Pellman*, 252 P.3d at 1127).

¶25 By observing in *Roggow* that adults may occupy a position of trust when, by virtue of their familiarity with the victim or the victim's family, they are entrusted with "special access" to a child, we did not purport to establish a new category of persons who fall under the position of trust statute. Rather, our reference to persons who are "entrusted with special access to a child" was this court's description of the overarching principle that binds the two categories of persons identified in the statute. *See id.* That is, the General Assembly intended to target adults who, by virtue of their position relative to the victim, are trusted to be alone with, and responsible for, a child. As we noted, "[s]uch access to a child presupposes trust." *Id.*

¶26 Importantly, we have made clear that for purposes of the position of trust statute, "a defendant need not be *expressly* charged with a particular duty or responsibility over the child at the time of the unlawful act in order to occupy a position of trust." *Id.* at ¶ 15, 318 P.3d at 450 (emphasis added). Rather, our case law has made clear that a duty or responsibility for the welfare or supervision of

12

a child can be implied from the circumstances. *See People v. Madril*, 746 P.2d 1329, 1336 (Colo. 1987) (concluding there was sufficient evidence that the defendant "voluntarily assumed 'a position of trust' with respect to [the victim] when he agreed to permit her to spend the evening with his children at his home"); *People v. Duncan*, 33 P.3d 1180, 1182–83 (Colo. App. 2001) (reasoning that because defendant affirmatively asked the victim's father for permission to take the victim to the defendant's home to work for him, the "defendant assumed responsibility for the welfare and supervision of the child both en route and in the home").

¶27    In *Roggow*, we held that a defendant may occupy a position of trust with respect to the victim "where an existing relationship or other conduct or circumstances establish that the defendant is entrusted with special access to the child victim." ¶ 15, 318 P.3d at 450. Today we clarify that a defendant's special access to the victim by virtue of an existing relationship or other conduct or circumstances is evidence of an implied duty or responsibility for the welfare or supervision of the victim during those periods of special access.

¶28    The defendant in *Roggow* had an implied duty for the victim's welfare or supervision when he brought her along on an errand. *See id.* at ¶¶ 30–33, 318 P.3d at 453. The context of the relationship between the child and the defendant, who was the landlord for the child's family and someone with whom the family often socialized, demonstrated that the defendant was entrusted with special access to

the victim.  *Id.*  The victim and her family "considered [Roggow] a family friend." *Id.* at ¶ 31, 318 P.3d at 453.  The victim's parents allowed the defendant to be around their children alone.  *Id.* at ¶ 32, 318 P.3d at 453.  As such, Roggow was entrusted with special access to the victim when the victim's father invited him to work in the house while the victim and her siblings were there alone.  *Id.* at ¶ 33, 318 P.3d at 453.  Accordingly, although Roggow was not expressly charged with any supervisory duty over the victim at the time of the unlawful act, he was impliedly responsible for her welfare when he took her from her home and brought her with him in his truck to the hardware store.  *See id.* at ¶¶ 31–32; 318 P.3d at 453.  In other words, given the relationship between Roggow and the child's family, the child's parents trusted Roggow to bring the eight-year-old child along for an errand and look out for her while she was with him.  *See id.*

¶29     Our decision in *Pellman* similarly reveals facts demonstrating that the defendant had an implied duty of supervision over or responsibility for the welfare of the victim given the existing relationship and circumstances.  In that case, the fifteen-year-old victim had permission from her parents to spend time alone at the defendant's house.  *Pellman*, 252 P.3d at 1124.  The defendant was a family friend and taught Sunday school at the church where the victim's father was a pastor, and he was a frequent dinner guest at the victim's home.  *Id.*

¶30    Thus, in both *Roggow* and *Pellman*, the defendant was not expressly charged with a duty of supervision over the child victim, but the relationship between the defendant and the victim's family and the surrounding circumstances reflected an implied duty of supervision over or responsibility for the victim's welfare when the defendant was alone with the victim.

¶31    We acknowledged in *Roggow* that whether a defendant occupies a position of trust will depend on the facts in a particular case, and we expressly declined to adopt an exhaustive definition to cover every conceivable situation in which a position of trust might arise. *Roggow*, ¶ 29, 318 P.3d at 453. But we rejected the contention that section 18-3-401(3.5) "requires the prosecution to prove that a defendant was *expressly* charged with supervisory responsibility over the victim at the time of the unlawful act." *Id.* (emphasis added). Rather, we concluded that a defendant may hold a position of trust with respect to a victim where an existing relationship or other conduct or circumstance establish that the defendant is entrusted with special access to the victim. *Id.* Being entrusted with special access to a child because of a close family relationship or similar circumstances carries the understanding that the entrusted adult will be responsible for the child's welfare during those periods of special access. *See, e.g.*, *Duncan*, 33 P.3d at 1182.

¶32    In sum, a defendant need not be expressly charged with a duty of supervision; in determining whether a defendant occupied a position of trust, the

15

fact the defendant is entrusted with special access to a child by virtue of an existing relationship or other conduct or circumstances is evidence of an implied duty or responsibility for the welfare or supervision of the victim during those periods of special access. *See Roggow*, ¶¶ 31–33, 318 P.3d at 453; *Pellman*, 252 P.3d at 1126–27.

## IV. Application

¶33 Here, the evidence viewed in the light most favorable to the prosecution established that Manjarrez had an implied duty or responsibility for the victim's welfare and supervision at the time of the assault.

¶34 Similar to *Roggow*, the context of the relationship between Manjarrez and the victim's family demonstrates that Manjarrez was entrusted with special access to the victim. Manjarrez frequently socialized and dined with the victim's family. He occasionally bought small gifts for the victim from the cities he visited. The victim's parents even allowed Manjarrez to take their youngest child out of state on a weeklong vacation. So when Manjarrez asked the victim's parents for their permission to hire the victim to clean his house, they permitted her to take the job because they knew him and trusted him to be alone with their daughter. *Cf. Madril*, 746 P.2d at 1336 (noting that the statutory definition of "position of trust" was broad enough to encompass a defendant who permitted a nine-year-old child to spend the night at his house). Absent the preexisting relationship, Manjarrez would not have been entrusted with such access to the victim.

16

¶35 That Manjarrez was entrusted with special access to the victim was evidence from which the jury could reasonably infer that he had an implied responsibility for the victim's welfare and supervision. In addition, the victim's mother testified that she expected Manjarrez to supervise the victim and be responsible for her welfare. The victim also testified that she would have gone to Manjarrez for assistance if she were hurt while cleaning. And Manjarrez's own actions also reflect an implied duty or responsibility for the victim's welfare and supervision during these periods of special access. He showed the victim how he wanted his house cleaned, and he was present during each of the three times she cleaned. On two of the cleaning dates, he picked the victim up before work and even fed her dinner. And he insisted on driving the victim home after she finished cleaning. Viewed in the light most favorable to the prosecution, the evidence at trial was sufficient to establish that Manjarrez occupied a position of trust with respect to the victim.

## V. Conclusion

¶36 Today, we clarify our holding in *Roggow* by explaining that a defendant's special access to the victim by virtue of an existing relationship or other conduct or circumstances is evidence of an implied duty or responsibility for the welfare or supervision of the victim during those periods of special access.

¶37    Here, the evidence at trial, viewed in the light most favorable to the prosecution, established that Manjarrez was entrusted with special access to the victim by virtue of his relationship with her family and that he was implicitly responsible for her welfare and supervision at the time of the assault.  Accordingly, we affirm the judgment of the court of appeals.