The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
November 2, 2023

**2023CA102**

**No. 22CA0331, *People v. Salazar* — Criminal Law — Jury Instructions — Sexual Assault on a Child by One in a Position of Trust — Mens Rea — Knowingly**

A division of the court of appeals considers a criminal defendant's challenge to the trial court's jury instructions defining the offense of sexual assault on a child by one in a position of trust under section 18-3-405.3(1), C.R.S. 2023. Specifically, he contends that the instructions were erroneous because they failed to apply the culpable mental state of the offense ("knowingly") to the element that he occupied a position of trust with respect to the child. Addressing a novel issue in Colorado, the division concludes that the culpable mental state does not apply to the position of trust element. Because the division also rejects his other claims, the division affirms the judgment.

COLORADO COURT OF APPEALS        **2023CA102**

---

Court of Appeals No. 22CA0331
Weld County District Court No. 19CR528
Honorable James F. Hartmann, Jr., Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Adrian Elijah Salazar,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division IV
Opinion by JUDGE NAVARRO
Grove and Bernard*, JJ., concur

Announced November 2, 2023

---

Philip J. Weiser, Attorney General, Alejandro Sorg, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Mark Evans, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant


*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2023.

¶ 1 Defendant, Adrian Elijah Salazar, appeals the judgment of conviction imposed on jury verdicts finding him guilty of several offenses based on his sexual abuse of two children. Among other offenses, he was convicted of multiple counts of sexual assault on a child by one in a position of trust. On appeal, Salazar contends that the trial court's jury instructions were erroneous because they failed to apply the culpable mental state of this offense ("knowingly") to the element that he occupied a position of trust with respect to the children. We disagree and hold that the culpable mental state does not apply to the position of trust element. Because we also reject Salazar's other challenges to the judgment, we affirm.

## I. Factual and Procedural History

¶ 2 The children at issue, M.R. and M.M., were less than fifteen years old at the time of the offenses. M.R.'s mother and Salazar were friends who met through their work. Salazar helped around M.R.'s house and ultimately spent time alone with him. M.M. is Salazar's cousin; Salazar also spent significant time alone with him. When alone with M.R. or M.M., Salazar played video games with them, took them to restaurants and to other activities, and had them stay overnight at his home.

¶ 3     After suspicions arose about the nature of Salazar's relationships with the boys, they underwent forensic interviews. During their initial interviews, both M.M. and M.R. denied any sexual abuse. At a later interview, however, M.M. disclosed that Salazar had sexually abused him.

¶ 4     Based on that interview, the police arrested and interviewed Salazar. He confessed to multiple instances of sexual contact with both M.M. and M.R., including acts of sexual contact with M.R. of which the police were then unaware (but which M.R. later confirmed).

¶ 5     Officers then conducted a second forensic interview with M.R., who again did not disclose any sexual abuse. Shortly before trial, however, M.R. disclosed Salazar's sexual assaults of him, and M.R. testified to those assaults at trial. M.M. also testified that Salazar had sexually assaulted him. Salazar did not testify at trial.

¶ 6     A jury convicted Salazar of sexual assault on a child, sexual assault on a child as part of a pattern of abuse, sexual assault on a child by one in a position of trust, and sexual assault on a child

who was less than fifteen years old by one in a position of trust and as part of a pattern of abuse.[1]

¶ 7    On appeal, Salazar contends that the trial court (1) erroneously instructed the jury on the culpable mental state for the position of trust charges; (2) admitted improper character evidence; (3) admitted improper testimony concerning probable cause that he committed the offenses; and (4) permitted prosecutorial misconduct. We do not detect reversible error.

## II.    Alleged Instructional Error

¶ 8    Salazar argues that the trial court erred by failing to instruct the jury that the culpable mental state of "knowingly" applies to the position of trust element of the offense of sexual assault on a child by one in a position of trust. We disagree.

### A.    Standard of Review

¶ 9    We review de novo whether the jury instructions adequately informed the jury of the governing law. *People v. Garcia*, 2021 COA

---

[1] The prosecution also charged Salazar with twenty-seven counts of sexual exploitation of a child based on his possession of sexually explicit videos depicting children. Those counts were severed from the other charges. Salazar pleaded guilty to two exploitation counts after the jury's verdicts on the other charges.

80, ¶ 9, *aff'd*, 2023 CO 30. We also review de novo "questions of statutory interpretation." *Manjarrez v. People*, 2020 CO 53, ¶ 19. While trial courts have "broad discretion to determine the form and style of jury instructions," an elemental instruction "should substantially track the language of the statute describing the crime." *People v. Grudznske*, 2023 COA 36, ¶ 48 (citation omitted).

### B.    Relevant Law

¶ 10    "In interpreting a statute, we give effect to the intent of the legislature." *Gorman v. People*, 19 P.3d 662, 665 (Colo. 2000). To do so, "[w]e begin with the plain language of the statute, reading the words and phrases in context and construing them according to their common usage." *Manjarrez*, ¶ 19.

¶ 11    "The power to define criminal conduct and to establish the legal components of criminal liability is vested in the General Assembly." *Gorman*, 19 P.3d at 665. The culpable mental state of a criminal statute "may speak to conduct, or to circumstances, or to result, or to any combination thereof, but not necessarily to all three." *People v. Cross*, 127 P.3d 71, 74 (Colo. 2006), *abrogated in part on other grounds by Counterman v. Colorado*, 600 U.S. 66, 143 S. Ct. 2106 (2023). "When a statute defining an offense prescribes

4

as an element thereof a specified culpable mental state, that mental state is deemed to apply to every element of the offense unless an intent to limit its application clearly appears." § 18-1-503(4), C.R.S. 2023. Under this rule and its exception, we must carefully consider whether the legislature intended that the expressed culpable mental state of the offense applies only to certain elements. *Cross*, 127 P.3d at 74.

¶ 12    Section 18-3-405.3(1), C.R.S. 2023, provides,

> Any actor who knowingly subjects another not his or her spouse to any sexual contact commits sexual assault on a child by one in a position of trust if the victim is a child less than eighteen years of age and the actor committing the offense is one in a position of trust with respect to the victim.

A person acts "knowingly" with respect to conduct or circumstances described by a statute when "he is aware that his conduct is of such nature or that such circumstance exists." § 18-1-501(6), C.R.S. 2023. One in a "position of trust" includes, but is not limited to,

> any person who is a parent or acting in the place of a parent and charged with any of a parent's rights, duties, or responsibilities concerning a child, including a guardian or someone otherwise responsible for the general

5

supervision of a child's welfare, or a person who is charged with any duty or responsibility for the health, education, welfare, or supervision of a child, including foster care, child care, family care, or institutional care, either independently or through another, no matter how brief, at the time of an unlawful act.

§ 18-3-401(3.5), C.R.S. 2023.

## C.    Relevant Facts

¶ 13    The trial court gave the jury the following instruction for all counts of sexual assault on a child by one in a position of trust:

> The elements of the crime of Sexual Assault on a Child by One in a Position of Trust as charged in counts 1, 2 (referring to [M.M.])[,] 5, and 6 (referring to [M.R.]) are:
>
> 1. That Adrian Elijah Salazar,
>
> 2. in the State of Colorado, at or about the date and place charged,
>
> 3. knowingly,
>
> > a. subjected ([M.M. or M.R.]), a child under eighteen years of age, who was not his spouse
>
> > b. to any sexual contact, and
>
> 4. Adrian Elijah Salazar was in a position of trust with respect to ([M.M. or M.R.]).

The court also instructed the jury on the statutory definition of "knowingly" as well as the meaning of one in a "position of trust." The jury returned guilty verdicts on all four position of trust counts.

### D.    Application

¶ 14    We reject Salazar's contention that the court erroneously instructed the jury by not wording the instruction so as to apply the culpable mental state of "knowingly" to the position of trust element of sexual assault on a child by one in a position of trust. We hold, as an apparent matter of first impression, that the mental state of "knowingly" does not apply to the position of trust element.

¶ 15    Although "knowingly" presumptively applies to every element of an offense when a statute prescribes this mental state, "this general rule contains an exception that applies to this case." *Cross*, 127 P.3d at 77; *see* § 18-1-503(4). The structure of section 18-3-405.3(1) makes this plain. *See Cross*, 127 P.3d at 76-77 (considering the "statutory phraseology," the statute's "actual wording," and the statement of legislative intent when deciding that the prescribed mental state of "knowingly" did not apply to all

elements).[2] "Knowingly" appears in the independent clause defining the conduct constituting sexual assault on a child by one in a position of trust: "Any actor who knowingly subjects another not his or her spouse to any sexual contact commits [this offense]." § 18-3-405.3(1). Hence, "knowingly" applies to this conduct.

¶ 16    The position of trust element, however, is offset by the conjunction "if" and appears in a different clause. § 18-3-405.3(1). Grammatically, "if" is widely understood to introduce a conditional clause, which is a clause that states a condition necessary "for the truth or occurrence of the main statement of a sentence." *United States v. Flores*, 664 F. App'x 395, 399 (5th Cir. 2016) (citation omitted). This separate conditional clause describes the

_____

[2] In *Counterman v. Colorado*, 600 U.S. 66, ___, 143 S. Ct. 2106, 2111 (2023), the United States Supreme Court addressed a Colorado stalking statute identical to the one at issue in *People v. Cross*, 127 P.3d 71 (Colo. 2006), and decided that the First Amendment requires proof that the defendant had some subjective understanding of the threatening nature of his statements. But the Court did not mandate a mental state of "knowingly," concluding instead that a mental state of recklessness was sufficient. *See Counterman*, 600 U.S. at ___, 143 S. Ct. at 2117-18. In any event, the Court's constitutional analysis has no bearing on the Colorado Supreme Court's interpretation of the legislature's intent in the statute at issue in *Cross*, a question of Colorado law. *See Willhite v. Rodriguez-Cera*, 2012 CO 29, ¶ 9 ("[T]his court is the final authority on questions of Colorado law.").

circumstances necessary for commission of the offense — including "the actor committing the offense is one in a position of trust with respect to the victim." § 18-3-405.3(1). Because "knowingly" does not appear in that separate clause, "knowingly" does not apply to this circumstance.[3] The trial court's instruction here accurately tracked the statutory language with respect to the position of trust element. *See Cross*, 127 P.3d at 77 ("The trial court's instruction possesses the virtue of utilizing the statute's actual language."); *Garcia*, ¶ 10 ("Instructions that accurately track the language of the applicable statute are generally sufficient.").[4]

---

[3] In his opening brief, Salazar acknowledges that the position of trust element represents an essential circumstance of the offense, which he also describes as the accused's "parent-like status" over a child. To the extent Salazar changes course in his reply brief (without explanation) and says this element defines conduct essential to the offense, we are not persuaded. As its name implies, the "position of trust" element refers to a circumstance or situation of a person, not to any particular action that person takes. *See People v. Roggow*, 2013 CO 70, ¶ 21 (explaining that the objective of the position of trust statute is "to protect vulnerable children from adult offenders *uniquely situated* to exploit those children") (emphasis added).

[4] The elemental instruction here seemed to apply "knowingly" to the element of the victim's age. Because neither party argues that this was erroneous, we express no opinion on that question.

¶ 17    Bolstering our view are decisions addressing statutes with analogous structures.  For instance, the decision in *Grudznske*, ¶ 63, concerned the extreme indifference murder and extreme indifference assault statutes.  A division of this court concluded that "the clear structure of the extreme indifference statutes demonstrate[s] that knowingly applies only to the action and outcome elements of the statutes, not the circumstances element." *Id.* at ¶ 65.  In support, the division explained that the circumstances element ("[u]nder circumstances evidencing an attitude of universal malice manifesting extreme indifference to the value of human life generally," § 18-3-102(1)(d), C.R.S. 2023) appeared in a different clause than "knowingly" and the action and outcome elements ("knowingly engages in conduct which creates a grave risk of death to a person, or persons, other than himself, and thereby causes the death of another," *id.*).  *Grudznske*, ¶ 65.

¶ 18    Additionally, in the statute examined in *Copeland v. People*, 2 P.3d 1283 (Colo. 2000), the mental states specified by the fourth degree arson statute ("knowingly or recklessly") appeared before both the proscribed conduct ("starts or maintains a fire . . . on his own property or that of another") and the proscribed result ("and by

10

so doing places another in danger of death or serious bodily injury"). *Id.* at 1284 (quoting § 18-4-105(1), C.R.S. 2023). Still, our supreme court concluded that the mental state requirement did not apply to the result element because the statute's "phraseology . . . demonstrate[d] the legislature's intent to hold the arsonist responsible for the fire's result, regardless of the arsonist's awareness of the fire's danger to other persons or property." *Id.* at 1286; *see also People v. Benzor*, 100 P.3d 542, 544 (Colo. App. 2004) (holding that, because "knowingly" appeared only in the conduct clause of the statute but not in the circumstance clause, the legislature intended that the "mental state 'knowingly' apply only to the conduct element of the crime of escape following conviction"); *People v. Metcalf*, 926 P.2d 133, 137-38 (Colo. App. 1996) (concluding that neither the specified mental state of "intent" nor an implied mental state of "knowingly" applied to all elements of the statute proscribing violation of a custody order).

¶ 19    Contrary to Salazar's view, the statute here is not like the one at issue in *Auman v. People*, 109 P.3d 647 (Colo. 2005), and *People v. Bornman*, 953 P.2d 952 (Colo. App. 1997). At the time of those cases, the relevant theft statute said, in part, that "[a] person

commits theft when he knowingly obtains or exercises control over anything of value of another without authorization." § 18-4-401(1), C.R.S. 2004.  The mental state of "knowingly" appeared in close proximity to the disputed element at issue — "without authorization."  Given this proximity (the mental state and the circumstance appeared in the same clause), the courts recognized that "knowingly" applied to the "without authorization" circumstance.  *See Auman,* 109 P.3d at 663-64; *Bornman,* 953 P.2d at 954.  In this case, however, the position of trust element in section 18-3-405.3 appears in an entirely separate clause from the mental state requirement and not near it.  So the mental state requirement does not apply to the position of trust element.

¶ 20     Our interpretation also aligns with the purposes behind the statute.  *Cf. Metcalf,* 926 P.2d at 138 (noting that the division's plain language reading of a statute furthered the statute's purpose of protecting children from those who intend to deprive the lawful custodian of custody of the child).  The position of trust statute "reflect[s] the General Assembly's overarching intent to target those offenders who are entrusted with special access to a child victim and who exploit that access to commit an offense against the child."

*Manjarrez*, ¶ 23 (quoting *People v. Roggow*, 2013 CO 70, ¶ 15). The legislature has recognized that "a child is more vulnerable to abuse if an offender is known to the child or is entrusted with the care of the child by one who is otherwise responsible for that care." *Id.* at ¶ 24 (citation omitted). Regardless of whether a person knows or subjectively believes they are in a position of trust as defined by statute, "[a] person in a position of trust is more likely to be alone with a child, successfully lure a child to a place of isolation, or manipulate a child to submit to abuse or keep it secret." *Id.* (citation omitted).

¶ 21    Accordingly, the legislature "intended to target adults who, by virtue of their position relative to the victim, are trusted to be alone with, and responsible for, a child." *Id.* at ¶ 25; *see also Pellman v. People*, 252 P.3d 1122, 1127 (Colo. 2011) ("In adopting the position of trust statute, the legislature focused on those instances in which a defendant has gained access to a child through the position of trust he or she holds."). And "a defendant need not be *expressly* charged with a particular duty or responsibility over the child at the time of the unlawful act in order to occupy a position of trust." *Roggow,* ¶ 2 (emphasis added). Rather, "a defendant may occupy a

position of trust with respect to the victim where an existing relationship or other conduct or circumstances establish that the defendant is entrusted with special access to the child victim." *Id.*; *see id.* at ¶ 21 ("To hold otherwise would limit the statute's otherwise broad definition of 'position of trust' and undermine its larger objective to protect vulnerable children from adult offenders uniquely situated to exploit those children."). Hence, when an offender occupies a position of trust with respect to a child, the legislature's intent to protect the child in this circumstance depends in no way on whether the offender subjectively believes they are in a position of trust. *Cf. Gorman,* 19 P.3d at 667 ("In analogous circumstances, the defendant's awareness of the victim's age is not the focus of the statute's mens rea requirement. The legislature holds the defendant responsible for the offense if the defendant engaged in the prohibited conduct and the victim's age fell within the statutorily defined age element.").

¶ 22    We recognize that the relevant model jury instruction may imply that "knowingly" applies to the position of trust element of this offense. *See* COLJI-Crim. 3-4:40 (2022). But courts are not bound by the model instructions because they are not law and are

14

not authoritative.  *Krueger v. Ary*, 205 P.3d 1150, 1154 (Colo. 2009); *see Grudznske*, ¶ 66 ("Nor do we reach a contrary conclusion based on the fact that the model jury instruction used knowingly to apply to the circumstances element of the extreme indifference offenses.").  Instead, courts should "'give weight' to the model instructions but must ultimately ensure that an instruction tracks the language of the statute."  *Grudznske*, ¶ 66 (citation omitted); *see Garcia v. People*, 2019 CO 64, ¶ 22 (explaining that, because "the model instructions weren't 'approved as accurate reflections of the law' and were merely 'intended as helpful resource material,'" they "are not a safe harbor that insulates instructional error from reversal") (quoting COLJI-Crim. Preface (2008)).  Here, the trial court's instruction followed the language of the statute.

¶ 23    In sum, because section 18-3-405.3(1) does not apply the "knowingly" mental state to the position of trust element of the statute, the elemental instruction here was correct.

### III.    Alleged Character Evidence

¶ 24    Salazar contends that the trial court violated CRE 404(a) by admitting a portion of his recorded interrogation video that

indicated his bad character for liking "younger guys."  We do not discern reversible error.

## A.     Relevant Principles

¶ 25     All relevant evidence is admissible unless otherwise provided by constitution, statute, or rule.  *See People v. Kern,* 2020 COA 96, ¶ 12; CRE 402.  "Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion," except in a few circumstances that do not apply here.  CRE 404(a).  Character evidence under CRE 404(a) "is a generalized description of a person's disposition, or of the disposition in respect to a general trait, such as honesty, temperance or peacefulness, that usually is regarded as meriting approval or disapproval."  *People v. Trujillo,* 2015 COA 22, ¶ 11 (citation omitted).

¶ 26     Salazar adequately preserved this issue.  While defense counsel did not cite CRE 404(a) specifically when objecting to the material at issue, counsel argued that the pertinent portion of the video "implie[d] a general character and a propensity to commit the types of assault and offenses charged by the People[,] which would not be admissible."  This argument implicated CRE 404(a).

¶ 27    Because Salazar preserved the claim, we review any violation

of CRE 404(a) under the harmless error standard applicable to

nonconstitutional error.  *See Yusem v. People*, 210 P.3d 458, 469

n.16 (Colo. 2009) ("Erroneous admission of CRE 404(b) evidence is

not error of constitutional dimension.").  Under this standard,

"reversal is required unless the error does not affect the substantial

rights of the accused."  *Id.* at 469.  "If a reviewing court can say

with fair assurance that, in light of the entire record, the error did

not substantially influence the verdict or impair the fairness of the

trial, the error may properly be deemed harmless."  *Kern*, ¶ 13.

B.    Relevant Facts

¶ 28    During Salazar's interrogation, and shortly after he confessed

to having sexual contact with both M.M. and M.R. (including anal

and oral sex), Salazar said he hated "that part about [himself]" and

he did not know whom he could talk to about it.  The interviewing

detective asked whether Salazar had ever tried to talk about it, and

he replied that "it's hard to go up to somebody and be like, I like

younger guys" and "I just had like cravings and I don't know how to deal with it and it was just hard."[5]

¶ 29 Salazar sought to redact this portion of the interview, but the trial court found the statements admissible.

### C. Application

¶ 30 We need not decide whether the court erred by admitting Salazar's statements about "liking younger guys" and having "cravings" because any error was harmless given the other admitted evidence that he does not challenge on appeal.

¶ 31 Any prejudicial impact of the challenged statements depended on their connection to Salazar's confession to sexual contact with M.M. and M.R. because that confession contextualized who Salazar considered to be "younger guys." In fact, his statement about liking "younger guys" immediately followed his confession to sexual contact with the victims and was part and parcel of that confession. But Salazar does not challenge the admission of that confession

---

[5] This reflects our best effort at understanding the recorded interrogation, which is difficult to hear at times. Our description is the same as Salazar's transcription of the interview.

into evidence.[6]  It seems unlikely that the jury would give any weight to his comment about liking "younger guys" unless the jury also believed his confession to sexual contact with the victims. That is, the jury likely would have either believed both Salazar's confession to the sexual contact and his comment about liking "younger guys" *or* disbelieved both.

¶ 32    Moreover, it is highly unlikely that the jury would have given greater weight to Salazar's confession to liking "younger guys" generally than to his confession to *acting* on that predilection on multiple occasions by sexually assaulting M.M. and M.R.  *See, e.g.*, *People v. Cross*, 2023 COA 24, ¶ 26 (concluding that the admission of testimony about the defendant's physical and emotional abuse of the victim was not unduly prejudicial "in the context of the allegation that [the defendant] shot the victim twice in the head"). Hence, if the jury did not otherwise believe Salazar's confession to sexually assaulting the boys on multiple occasions, the challenged comments would not have tipped the scales toward conviction.

---

[6] During trial, defense counsel argued that Salazar confessed to the crimes merely to end the interrogation, not because the confession was true.  On appeal, Salazar does not contend that his confession was involuntarily made or was otherwise inadmissible.

¶ 33    Finally, the evidence against Salazar was very strong because his confession corroborated the victims' testimony, as did text messages and videos. *People v. Mendenhall*, 2015 COA 107M, ¶ 70 (holding in part that an error was harmless because there was overwhelming evidence that the defendant was guilty). And the prosecutor never mentioned the "younger guys" comment during trial. *See People v. Compos*, 2019 COA 177, ¶ 37 ("Moreover, when a reference to improper conduct is fleeting, . . . the potential prejudice is minimized."), *aff'd in part and vacated in part*, 2021 CO 19.

¶ 34    Consequently, we conclude that the brief mention of Salazar's liking "younger guys" and having "cravings" did not substantially influence the verdict or affect the fairness of the trial. *Hagos v. People*, 2012 CO 63, ¶ 12.

### IV.    Evidence Pertaining to Probable Cause

¶ 35    Salazar contends the trial court erred by permitting improper testimony about the police having probable cause to arrest him. We see no need for reversal.

## A. Standard of Review and Preservation

¶ 36    The parties dispute whether this issue was preserved. We need not resolve this dispute because, even assuming Salazar preserved this claim, any error was harmless.

## B. Relevant Facts

¶ 37    During trial, the prosecutor asked Officer Adam Cronquist whether he had arrested Salazar on a particular date. Defense counsel objected, arguing that the facts that Salazar had been arrested and that he was in custody during this case were irrelevant and unfairly prejudicial.[7] After the court overruled the objection, the following exchange then took place:

> [Prosecutor]: Did you arrest someone by the name of Adrian Elijah Salazar on February 25th of 2019?
>
> [Officer]: Yes, sir.
>
> [Prosecutor]: And why did you make that arrest?
>
> [Officer]: Detective [Erin] Gooch had sent out an email indicating she had probable cause to arrest him.

---

[7] We note that defense counsel had already elicited evidence of Salazar's arrest from a previous witness.

Later, when questioning Detective Gooch, the prosecutor asked:

> [Prosecutor]: [Detective], after that forensic
> interview, what decision did you make or what
> did you do after collecting those drawings?
>
> [Detective]: I just wrote [a] warrantless arrest
> affidavit.  And then I sent out an email kind of
> [to] the Department to let them know that I
> had probable cause.

¶ 38    Before closing arguments, the court instructed the jury that the fact that Salazar had been arrested and remained in custody while this case was pending "is irrelevant and cannot be used as [a]n inference of guilt and cannot prejudice Mr. Salazar."  The court explained, "It is not evidence, does not prove anything, and the fact of his incarceration must not be considered for any purpose."

## C.    Relevant Law and Its Application

¶ 39    Generally, when probable cause to arrest the defendant is not at issue, it is improper to present evidence about obtaining an arrest warrant or possessing probable cause.  *People v. Mullins*, 104 P.3d 299, 301 (Colo. App. 2004).  But we conclude that any error in admitting the challenged evidence was harmless in this case.

¶ 40    The evidence here did not resemble the detailed testimony admitted in *Mullins*, in which an officer testified that (1) the police

must convince a judge that they have sufficient information to believe the defendant committed a crime and (2) a judge had found probable cause in that case. *See id.* ("The facts that the police believed they had enough evidence and that a judge found there was probable cause to arrest defendant had no rational tendency to prove that defendant committed the assault."). Moreover, the other factors favoring reversal in *Mullins* are absent here. *See id.* at 301-02 (reversing in light of (1) the detailed testimony; (2) the fact that the improper evidence undermined the defendant's self-defense claim; (3) the trial court's statement that "the evidence indicated a 'very close case of self-defense'"; and (4) the prosecutor's improper closing argument about self-defense). And nothing in *Mullins* reveals that the trial court there gave a limiting instruction like the one the court gave here.

¶ 41    Nor is the testimony challenged here akin to the extensive evidence of the prosecution's screening process preceding its charging decisions admitted in *Mendenhall*, ¶¶ 54-59, or the prosecutor's closing argument describing a "screening process" that weeds out weak cases in *Domingo-Gomez v. People*, 125 P.3d 1043, 1052 (Colo. 2005) ("The prosecutor's reference to a 'screening

23

process' is improper because it both hints that additional evidence supporting guilt exists and reveals the personal opinion of the prosecutor."). In any event, consistent with our analysis, the appellate courts in those cases concluded that the errors did not warrant reversal. *See Mendenall*, ¶¶ 60-71; *Domingo-Gomez*, 125 P.3d at 1054-55.

¶ 42 To reiterate, the testimony here was brief and lacked detail. Probable cause was mentioned twice, but the witnesses did not describe how officers obtain probable cause, what that means, or whether a judge made a probable cause finding. The prosecutor did not mention probable cause during closing argument, and the court gave a pointed instruction limiting the jury's use of the arrest evidence. *See People v. Dominguez-Castor*, 2020 COA 1, ¶ 91 ("Absent a contrary showing, we presume that the jury followed that instruction.").

¶ 43 Given all this, we conclude that the alleged error did not substantially influence the verdict or impair the fairness of the trial. *See Kern*, ¶ 13.

## V. Alleged Prosecutorial Misconduct

¶ 44 Salazar's final argument is that the trial court erred by failing to address, sua sponte, prosecutorial misconduct during closing arguments. We disagree.

### A. Relevant Principles

¶ 45 When reviewing a claim of prosecutorial misconduct, "we consider whether the prosecutor's conduct was improper and whether any impropriety requires reversal." *People v. Walker*, 2022 COA 15, ¶ 27. "Whether a prosecutor's statements constitute misconduct is generally a matter left to the trial court's discretion." *Domingo-Gomez*, 125 P.3d at 1049. Therefore, we will not disturb the trial court's rulings on alleged misconduct absent a showing of an abuse of that discretion. *Walker*, ¶ 27.

¶ 46 Because Salazar's counsel did not object to the alleged misconduct in the trial court, we may reverse only if plain error occurred. *See id.* at ¶ 28. "[P]lain error occurs when there is (1) an error, (2) that is obvious, and (3) that so undermines the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction." *Cardman v. People*, 2019 CO 73, ¶ 19. To be plain, "an error must 'be so obvious' at

the time it is made 'that a trial judge should be able to avoid it without the benefit of an objection.'" *Id.* at ¶ 34 (citation omitted).

¶ 47　Reversals on plain error review "must be rare to maintain adequate motivation among trial participants to seek a fair and accurate trial the first time." *Hagos*, ¶ 23. Thus, prosecutorial misconduct is plain error only if it is flagrantly, glaringly, or tremendously improper. *Walker*, ¶ 28.

### B.　Relevant Facts

¶ 48　During closing argument, the prosecutor focused on the idea that M.M. and M.R. testified to similar experiences with Salazar. Then, after explaining the elements of the offenses and how the evidence supported each element, she returned to the victims' shared experiences. She argued,

> And I know it's a big ask because it's a big crime, but I am asking you to have today be the last day that you give these boys something new to share in common. Let today be the day that you tell both of these boys "we believe you." Let today be the day that they share in common, that their courage in coming in here and talking about what happened to them is going to hold their abuser accountable.
>
> Even if their paths never cross ever again, let them know that somehow together all of the things that they shared in common were

> convincing enough for you to become the
> criminal justice system right now. You get the
> last word. I don't get it; they don't get it; you
> get it. Make the last word be that these boys
> have something in common and that he is
> guilty of abusing both of them.

In rebuttal, the prosecutor reiterated,

> Don't make these boys wait any longer before
> you tell them that they are believed and before
> you convict this man of each and every thing
> that he is charged with.

Defense counsel did not object to any of these arguments.

### C.    Application

¶ 49     According to Salazar, the prosecutor improperly appealed to the jurors' passions or prejudices and pressured them to find Salazar guilty to achieve justice for the victims.

¶ 50     Prosecutors may not use arguments calculated to inflame the passions and prejudices of the jury. *People v. Sampson*, 2012 COA 167, ¶ 32. But although the prosecutor sailed close to the wind with some of the challenged comments, we need not decide whether the prosecutor erred because we conclude that the argument was not so egregious as to constitute plain error.

¶ 51     The premise of the prosecutor's arguments was that the jury should convict Salazar if the jury believed the victims. And it is

true that, if the jury believed the victims, Salazar committed sexual assault on a child. *See People v. Krutsinger*, 121 P.3d 318, 324 (Colo. App. 2005) ("[W]here the case turns on which witness the jury believes, each side is entitled to argue that its witnesses testified truthfully . . . ."). The prosecutor did not argue that the jury should convict Salazar regardless of whether the jury believed the victims but solely to do justice. *Cf. People v. McBride*, 228 P.3d 216, 223 (Colo. App. 2009) (holding that a prosecutor's telling jurors to "do justice for other strangers" was improper because it suggested that guilty verdicts were necessary for justice). And before the arguments at issue, the prosecutor methodically walked through each element of each offense and explained how the evidence supported each element. Therefore, the prosecutor's arguments, overall, were anchored in the evidence, not in emotion. *See People v. McMinn*, 2013 COA 94, ¶ 61 ("Prosecutors may comment on the evidence admitted at trial and the reasonable inferences that can be drawn therefrom."); *see also People v. Vialpando*, 2022 CO 28, ¶ 23 (recognizing that a prosecutor may use oratorical embellishment and metaphorical nuance).

¶ 52    In addition, the prosecutor's comments were fleeting within the context of closing argument and the trial at large. *See Walker*, ¶ 49 (discerning no plain error in prosecutor's allegedly improper remarks because, among other things, they were fleeting). And defense counsel's failure to object indicates counsel's belief that the prosecutor's arguments were not overly damaging. *See Domingo-Gomez*, 125 P.3d at 1054.

¶ 53    For these reasons, as well as the strong evidence of Salazar's guilt, we conclude that the prosecutor's conduct "does not warrant the drastic remedy of reversal under the plain error standard." *Id.* at 1055.[8]

## VI.   Conclusion

¶ 54    The judgment is affirmed.

JUDGE GROVE and JUDGE BERNARD concur.

---

[8] To the extent Salazar appends a cumulative error argument to the end of his prosecutorial misconduct claim in his opening brief, we decline to address it because it is presented in a very conclusory fashion. *See People v. Relaford*, 2016 COA 99, ¶ 70 n.2 ("We do not consider bare or conclusory assertions presented without argument or development."); *People v. Mendoza*, 313 P.3d 637, 645 (Colo. App. 2011) ("If [the party] wanted a weightier resolution of the issue, it should have mounted a weightier contention. Gravitas begets gravitas.") (citation omitted).